IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FEDERATED SERVICE INSURANCE CO.,

    Plaintiff,

vs.                                                                                                          Civ. No. 06-638 JP/WDS

DANNY MARTINEZ,

    Defendant.

## MEMORANDUM OPINION AND ORDER

On May 25, 2007, Plaintiff/Counterdefendant Federated Service Insurance Company filed a Motion for Summary Judgment (Doc. No. 24) ("Plaintiff's MSJ"). On the same date, Defendant/Counterclaimant Danny Martinez filed a Motion for Summary Judgment (Doc. No. 26) ("Defendant's MSJ"). The Court held a pretrial conference and motion hearing on the parties' cross motions for summary judgment on August 9, 2007. Plaintiff was represented by attorney Charles Peifer, and Defendant was represented by attorneys James T. Roach and Steven C. Ewing. The Court heard oral argument concerning the issues raised in the parties' motions. Having considered these arguments, the briefs, and evidence in the record, the Court concludes that Plaintiff's MSJ should be granted and that Defendant's MSJ should be denied.

**I.     INTRODUCTION**

This case arises out of a motor vehicle accident involving Defendant and an uninsured motorist that occurred on the premises of Capitol Motor Company ("Capitol") in Sante Fe, New Mexico. Plaintiff alleges that Defendant is not entitled to uninsured/underinsured motorist ("UM/UIM") liability coverage under an insurance policy issued by Plaintiff to Capitol. In its Complaint, Plaintiff asserts a single claim for declaratory judgment. Defendant alleges in his

Answer that he is entitled to UM/UIM liability coverage under the insurance policy issued by Plaintiff to Capitol.  In the alternative, Defendant claims that if he is not covered by UM/UIM liability coverage under the insurance policy, then Plaintiff was negligent in not providing this coverage to Capitol.  Defendant asserts the following counterclaims:

>Count I:  Request for Declaratory Judgment;
>
>Count II:  Damages for Personal Injury;
>
>Count III:  Breach of Contract;
>
>Count IV:  Bad Faith Violation of New Mexico Insurance Code and Unfair Practices Act; and
>
>Count V:  Negligence.

Plaintiff seeks summary judgment on its claim and Defendant's first four counterclaims, while Defendant seeks summary judgment on his first four counterclaims and Plaintiff's claim.  Because neither party addressed Defendant's Count V negligence counterclaim, the parties' respective motions for summary judgment should properly be considered as motions for partial summary judgment.

## II.   FACTUAL BACKGROUND

In May 2005, Defendant was an employee of Capitol.  The parties have stipulated that he was not a director, officer, partner, or owner of Capitol at any time.  On May 11, 2005 Marc Osgood, an uninsured motorist, had a seizure while driving a car on the Capitol lot and struck Defendant.  Defendant suffered severe injuries, including permanent, catastrophic damage to his spinal cord, and is now a quadriplegic.  Defendant later requested payment of UM/UIM benefits from Plaintiff, but Plaintiff denied Defendant's claim on the ground that Capitol had rejected UM/UIM coverage for its employees.

At the heart of this dispute is a commercial package insurance policy issued by Plaintiff to Capitol which was in effect from March 1, 2005 to March 1, 2006.  Capitol first obtained coverage from Plaintiff in March 2001.  Marc Brandt, the general manager of Capitol, worked with Denny Rommann, an employee of Plaintiff, on finalizing Capitol's insurance coverage.  In the original 2001 policy, Plaintiff provided Capitol with $500,000 of UM/UIM coverage per accident for management employees, and $60,000 per accident for non-management employees.  *See* Commercial Package Policy Excerpts, Plf.'s MSJ, Ex. E.  On November 30, 2001 Mr. Rommann executed a policy adjustment request effective March 1, 2002 which states "change UM coverage to $500,000 owners + off[icers] + 0 for all other Empl[oyees]."  Policy Adjustment Request, Plf.'s MSJ, Ex. F.  While only Mr. Rommann's signature appears on this document, both Mr. Brandt and Mr. Rommann testified that Mr. Brandt authorized the changes and directed Mr. Rommann to complete the necessary paperwork.  *See* Marc Brandt Dep. at 24, 26-27, 33, 96, Plf.'s MSJ, Ex. D; Denny Rommann Dep. at 63, 82, Plf.'s MSJ, Ex. G.  Mr. Brandt decided to eliminate UM/UIM coverage for non-management level employees because he believed that such coverage overlapped with workers' compensation insurance.  *See* Brandt Dep. at 19-20, 53, Plf.'s MSJ, Ex. D.  Nonetheless, on March 29, 2002 Mr. Brandt signed a New Mexico Commercial Auto Coverage Option Form in which he again selected $60,000 of UM/UIM coverage per accident for non-management level employees.  *See* Def.'s MSJ, Ex. 4.  Though there was a box that could be checked to reject UM/UIM coverage for Capitol's non-management employees, Mr. Brandt did not do so.  *See id*.

  Subsequently, Plaintiff issued a policy change endorsement on May 8, 2002 and provided Capitol with a return premium credit of $505 for the eliminated UM/UIM coverage.  *See* Policy Change Endorsement at FED 0156, Plf.'s MSJ, Ex. H; Rommann Dep. at 86, Plf.'s MSJ, Ex. G.

Every subsequent renewal policy issued by Plaintiff to Capitol, including the policy in effect when Defendant was injured, included Endorsement CA-F-93 (11-01) ("UM/UIM Endorsement") which states that all non-management employees of Capitol are "NOT COVERED" for purposes of UM/UIM insurance. *See* UM/UIM Endorsement, Plf.'s MSJ, Exs. A, I, J. This endorsement is referenced in the declarations for the Garage Coverage Part of the policy, and is attached thereto. *See, e.g.,* Declarations at CP 0980, Plf.'s MSJ, Ex. A; *see also* Schedule of Forms and Endorsements at CP 0984, Plf.'s MSJ, Ex. A; UM/UIM Endorsement at CP 1024, Plf.'s MSJ, Ex. A. In reference to the UM/UIM Endorsement, both Capitol, the named insured, and Plaintiff are in agreement that the insurance policy was not intended to provide UM/UIM coverage for Defendant. *See* Brandt Dep. at 30-31, 35, 48-49, Plf.'s MSJ, Ex. D.

During the course of the motion hearing, the parties represented to the Court that the facts in this case are not in dispute and that the case is therefore ripe for summary judgment.

**III.    STANDARD: Motions for Summary Judgment and Applicable Law**

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Santana v. City and County of Denver*, 488 F.3d 860,864 (10th Cir. 2007) (citing Fed. R. Civ. P. 56©). The court must examine the record and draw reasonable inferences therefrom in the light most favorable to the non-moving party. *See Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000). Summary judgment is proper where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 252 (1986).

The parties' filing of cross-motions for summary judgment does not change this standard of review. *Burrows v. Cherokee County Sheriff's Officers*, 2005 WL 1185620 (D. Kan. May 18, 2005) (unpublished opinion) (citing *Taft Broadcasting Co. v. U.S.*, 929 F.2d 240, 249 (6th Cir. 1991)). "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another." *Christian Heritage Academy v. Oklahoma Secondary School Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007) (citation omitted).

Because the Court's jurisdiction over this case is based on diversity of citizenship, the law governing the causes of action is the law that would be applied if the case had been brought in New Mexico state court. *See Butt v. Bank of Am., N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007) ("When exercising diversity jurisdiction, we apply state law with the objective of obtaining the result that would be reached in state court"). "Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do." *Wade v. Emcasco Ins. Co.,* 483 F.3d 657, 666 (10th Cir. 2007) (internal quotation marks omitted). The parties agree that the applicable substantive law is that of New Mexico, and thus the Court assumes that this case is governed by New Mexico substantive law. *See TMJ Implants, Inc. v. Aetna, Inc.,* – F.3d –, 2007 WL 2372372, *3 (10th Cir. August 21, 2007) (applying substantive law of state that parties agree controls).

**IV.   DISCUSSION**

The only question before the Court is whether Defendant is entitled to UM/UIM coverage under Capitol's insurance policy from Plaintiff. This question turns on whether the UM/UIM Endorsement, which states that all non-management employees of Capitol are "NOT COVERED" for purposes of UM/UIM insurance, qualifies as a valid rejection of uninsured

motorist coverage under New Mexico law.

In New Mexico, all automobile insurance policies must provide uninsured motorist coverage unless such coverage is specifically rejected by the named insured. *See* NMSA 1978, § 66-5-301. The state superintendent of insurance has promulgated the following regulation that prescribes the manner by which coverage may be rejected: "[t]he rejection of the provisions covering damage caused by an uninsured or unknown motor vehicle as required in writing by the provisions of Section 66-5-301 NMSA 1978 must be endorsed, attached, stamped or otherwise made a part of the policy of bodily injury and property damage insurance." N.M. Admin. Code § 13.12.3.9. However, the actual form of the rejection is not specified in the regulation.

Both Plaintiff and Defendant point to *Romero v. Dairyland Ins. Co.*, 111 N.M. 154, 803 P.2d 243 (N.M. 1990) and *Kaiser v. DeCarrera*, 122 N.M. 221, 923 P.2d 588 (N.M. 1996) as the controlling New Mexico Supreme Court decisions in this area of the law. However, both cases concern not the form of the actual rejection, but rather whether the rejection of UM/UIM coverage was "endorsed, attached, stamped or otherwise made a part of the policy." N.M. Admin. Code § 13.12.3.9. Nonetheless, the New Mexico Supreme Court did provide guidance as to what may properly constitute a rejection by highlighting the policy rationale underlying the New Mexico statute and regulation.

In *Romero*, the court noted that a rejection must "clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived," and should "ensure that the insured has affirmative evidence of the extent of coverage." *Romero*, 111 N.M. at 156, 803 P.2d at 245. Envisioning a scenario in which an individual, after having an opportunity to review the policy at home, might reconsider his or her rejection of uninsured motorist coverage, the court considered it imperative that "[a]ny individual rejecting such coverage should remain well

6

informed as to that decision," and that "any rejection of the coverage be knowingly and intelligently made." *Id*. In evaluating the facts of that case, the court noted that the insured "was never given a copy of the application containing the rejection; and the declarations sheet that she later received made no mention of the rejection of uninsured motorist coverage." *Id*. at 157, 803 P.2d at 246. "The only documentation of the rejection of uninsured motorist coverage consisted of two copies of Romero's application for insurance, one that stayed in the agent's files and another that was sent to [the insurer's] home office." *Id*. In addition, the insurance policy declarations sheet did not mention any endorsement relating to uninsured motorist coverage, and did not provide an explanation for the various codes that appeared at its base. *Id*. at 159, 803 P.2d at 248. Rejecting the insurer's argument that the insured should have realized that she did not have uninsured motorist coverage because the policy only showed coverage for bodily injury and property damage, the court stated that it could not "agree that these cryptic codes and extended inferences should satisfy the regulation that the rejection of uninsured motorist coverage be made a part of the policy." *Id*. On those facts, the court held that "the rejection of uninsured motorist coverage was invalid and ineffective as a matter of law." *Id*. at 157, 803 P.2d at 246.

The New Mexico Supreme Court reaffirmed these principles in *Kaiser* and again focused on the language in the latter half of the regulation concerning the manner of rejection. "The rejection must be made a part of the policy by endorsement on the declarations sheet, by attachment of the written rejection to the policy, or by some other means that makes the rejection a part of the policy so as to clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived." *Kaiser,* 122 N.M. at 223, 923 P.2d at 590 (quoting *Romero*). Recognizing that the regulation was promulgated to "provide[] the insured with

affirmative evidence of the extent of coverage for future reference" for instances in which "people reconsider their insurance coverage," the court went on to note that the reason the court read UM/UIM coverage into the policies of the insureds in both *Romero* and *Kaiser* was that "[n]either Josie Romero in *Romero* nor Kaiser in this case had affirmative evidence of the extent of their coverage, in violation of [N.M. Admin. Code § 13.12.3.9]." *Id*. at 224, 923 P.2d at 591.

Based on this interpretation, there does not appear to be any requirement under New Mexico law that a rejection of UM/UIM coverage takes any particular form, *e.g.*, a document with a box that must be checked to decline coverage.  Rather, the New Mexico Supreme Court has adopted a broader definition of rejection which encompasses a principle more so than a particular physical form.  In both *Romero* and *Kaiser*, the court focused on whether any hint of rejection of UM/UIM coverage could be gleaned from the insurance policies that were in the possession of the insureds.  Because such information was lacking in those insurance policies, the court concluded that the policy goal of encouraging insureds to reconsider their decisions to reject UM/UIM coverage was undermined in those cases.  Furthermore, both cases confirm that attachment of the actual written rejection is only one of many possible means of incorporating the concept of UM/UIM coverage rejection into the insurance policy.  *Romero*, 111 N.M. at 156, 803 P.2d at 245; *Kaiser,* 122 N.M. at 223, 923 P.2d at 590.  So long as some means of making the rejection a part of the policy is employed "to clearly and unambiguously call to the attention of the insured the fact that such coverage has been waived," the requirements of New Mexico law are satisfied.  *Id*.

Turning to the facts before the Court, Plaintiff asserts that the UM/UIM Endorsement, Endorsement at CP 1024, Plf.'s MSJ, Ex. A, which is included in the Garage Coverage Part of the commercial insurance policy issued to Capitol by Plaintiff, qualifies as a valid rejection of

uninsured motorist coverage for non-management level employees under New Mexico law. The UM/UIM Endorsement states in no uncertain terms that non-management level employees are "NOT COVERED" for purposes of UM/UIM insurance. Because this form "provides the insured with affirmative evidence of the extent of coverage for future reference," *Kaiser,* 122 N.M. at 224, 923 P.2d at 591, and "clearly and unambiguously call[s] to the attention of the insured the fact that such coverage has been waived," *Romero*, 111 N.M. at 156, 803 P.2d at 245; *Kaiser,* 122 N.M. at 223, 923 P.2d at 590, the Court finds that the UM/UIM Endorsement is a valid rejection of uninsured motorist coverage under New Mexico law.

Plaintiff also references the holding in *Wilson v. Federated Service Ins. Co.*, Civ. No. 97-1142 DJS/LFG (D.N.M. April 14, 1998) (Doc. No. 23) (memorandum opinion and order) ("*Wilson D.C.*"), *aff'd*, *Wilson v. Federated Service Ins. Co.*, 173 F.3d 865 (10th Cir. April 1, 1999) (unpublished opinion) ("*Wilson Ct. App.*"), in support of its position. In *Wilson D.C.*, the court considered the exact issue presented in this case by the parties' cross-motions for summary judgment. There, the endorsement form "provided uninsured/underinsured motorist coverage for directors, officers, partners, or owners of the company and those persons' family members, but not for any other person insured under the policy." *Wilson D.C.*, Civ. No. 97-1142, memorandum opinion and order at 3. The district court disagreed with the employee that a written rejection form was required to decline UM/UIM motorist coverage, and concluded that the endorsement form showing rejection of underinsured motorist coverage for employees of the insured was valid under New Mexico law because "all that New Mexico law requires is that the rejection be made a part of the policy by some means so as to clearly and unambiguously call to the attention of the insured the fact that coverage has been waived." *Id.* On appeal, the Tenth Circuit affirmed the lower court's holding and noted that the "policy attachment stating that only

directors, officers, partners, or owners of [employer] are provided U[M]/UIM coverage" was a valid written rejection of UM/UIM coverage that was properly incorporated into the insurance policy at issue. *Wilson Ct. App.*, 173 F.3d 865, at *1. In addition, though the employer did not sign the rider rejecting UM/UIM coverage, the Tenth Circuit held that "[a] signed waiver is not required," and that all of "the requirements set forth by the regulations promulgated by the New Mexico Department of Insurance were met." *Id.*

The Court finds that the *Wilson* rulings by both the district court and the court of appeals further bolster its conclusion that the UM/UIM Endorsement satisfies the concerns discussed by the New Mexico Supreme Court in *Romero* and *Kaiser*. Because both the district court and the court of appeals in *Wilson* examined an endorsement form that was essentially identical to the UM/UIM Endorsement in this case, their analysis is both persuasive and highly probative of whether there was a valid rejection of UM/UIM coverage by Capitol. Defendant objects to Plaintiff's reliance on the unpublished opinions in *Wilson*. The Court recognizes that these decisions lack precedential value, but this does not mean, as Defendant suggests, that it is improper to cite or otherwise reference them. *See U.S. v. Anglin*, 438 F.3d 1229, 1230 n.1 (10th Cir. 2006) (noting that unpublished opinions may have persuasive value).

Finally, Defendant relies heavily on the decision in *Farm Bureau Mut. Ins. Co. v. Jameson*, 472 F. Supp. 2d 1272 (D.N.M. 2006) for support for his contention that the UM/UIM Endorsement is not a valid rejection of uninsured motorist coverage for non-management level employees under New Mexico law. In *Jameson*, the insurance company issued an automobile insurance policy to the Jameson family. The defendant family "never signed forms that specifically contained a written rejection of UM coverage or a written rejection of the stacking of UM coverage, but did sign an application that listed the following coverage limits, which

subsequently appeared on the their declarations page: liability limits at $100,000 per person/$300,000 per occurrence; UM limits at $25,000 per person/$50,000 per occurrence . . ." *Id*. at 1275.  The court concluded that the insurance company "was required to offer UM coverage equal to liability limits and to obtain a signed, written rejection from the Jamesons if they did not desire such, and include it in the policy in some manner." *Id*. at 1287.  Because the court concluded that the insurance company had not fulfilled its obligations under New Mexico law, it "read into the Jamesons' policy UM coverage limits equal to their liability coverage limits." *Id*.

  The Court finds the reasoning in *Jameson* inapposite to this case for three reasons.  First, the policy at issue in *Jameson* was a personal automobile insurance policy, and not a corporate insurance policy.  New Mexico courts have noted that the UM/UIM policy concerns underlying these two categories of insurance policies are distinct.  *See Rehders v. Allstate Insurance Co.*, 139 N.M. 536, 547, 135 P.3d 237, 248 (N.M. Ct. App. 2006) (in an insurance stacking case, the court noted that "the public policy considerations relating to UM coverage for a corporation are different" from those for an individual).  Second, the family in *Jameson* was the named insured under the policy, whereas Defendant, at most, might qualify as a third-party beneficiary to the policy between Plaintiff and Capitol.  The New Mexico Supreme Court has recognized that in certain circumstances, named insureds and third party beneficiaries are not treated equally under New Mexico law when questions of insurance coverage arise.  *See Jaramillo v. Providence Washington Ins. Co.*, 117 N.M. 337, 341-42, 871 P.2d 1343, 1347-48 (N.M. 1994) ("In cases in which the question is whether a third-party beneficiary is entitled to coverage, if the premium-paying insured and the insurer agree as to what they intended, that should be controlling") (citation omitted).  Finally, the facts in *Jameson* revolved around the insurer's

failure to offer the Jameson family UM/UIM coverage in an amount up to the liability coverage amount, the Jameson family's consequent selection of an UM/UIM coverage amount lower than the liability coverage amount, and the insurer's concomitant failure to obtain a written rejection of UM/UIM coverage up to the liability coverage amount.  Thus, there was no evidence that the Jameson family was aware that it could select or reject UM/UIM coverage up to the liability coverage amount, and no evidence whatsoever of any rejection of full UM/UIM coverage.  In contrast, Plaintiff has proffered evidence that it offered Capitol UM/UIM coverage up to Capitol's liability coverage amounts, and that for the insurance policy in effect on the date of Defendant's accident, Capitol's rejection of UM/UIM coverage for its non-management level employees was complete, rather than a partial acceptance.  For these reasons, the Court concludes that *Jameson* should not apply in this case.

**IT IS THEREFORE ORDERED** that:

I.      Plaintiff's Motion for Summary Judgment (Doc. No. 24) is **GRANTED**; and

II.     Defendant's Motion for Summary Judgment (Doc. No. 26) is **DENIED**.

_____
SENIOR UNITED STATES DISTRICT JUDGE