# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

**FEDERATED SERVICE INSURANCE
COMPANY, a Minnesota Corporation,**

     **Plaintiff,**

**vs.**                                                                        **06-CV-638 JAP/WDS**

**DANNY MARTINEZ,**

     **Defendant.**

## MEMORANDUM OPINION AND ORDER

On February 11, 2011, Defendant Danny Martinez (Martinez) filed Martinez' Renewed
Motion For Summary Judgment On Coverage (Doc. No. 103) and Martinez' Brief In Support Of
His Renewed Motion For Summary Judgment On Coverage (Doc. No. 104) (together,
Martinez's Renewed MSJ). On March 11, 2011, Plaintiff Federated Service Insurance Company
(Federated) filed Plaintiff Federated Service Insurance Company's Response In Opposition To
Defendant Danny Martinez's Renewed Motion For Summary Judgment On Coverage (Doc. No.
109) (Response To Renewed MSJ). On March 25, 2011, Martinez filed Martinez' Reply Brief In
Support Of His Renewed Motion For Summary Judgment On UM/UIM Coverage (Corrected)
(Doc. No. 111) (Reply On Renewed MSJ). On March 31, 2011, the Court heard oral argument
from the parties on Martinez's Renewed MSJ.

In Mr. Martinez's Renewed MSJ, Response To Renewed MSJ, and Reply On Renewed
MSJ, the parties incorporated arguments from several other dispositive motions, responses,
replies and briefs that the parties have filed since the Tenth Circuit Court of Appeals remanded
the case to this Court. In this ruling, the Court has considered all incorporated arguments as they

1

pertain to coverage. To the extent that the dispositive motions are affected by the holding in this Memorandum Opinion and Order, the Court will grant or deny them accordingly. The Court will refer to exhibits attached to the various motions, responses and briefs by document number from the Court's electronic docket. In chronological order, the pleadings and documents filed since remand are as follows:

1) Danny Martinez' Motion For Summary Judgment On Stacking Of Uninsured Motorist Coverage Under The Federated Service Insurance Company's Policy (Doc. No. 62) filed on August 18, 2010;

2) Plaintiff Federated Service Insurance Company's Motion For Summary Judgment On The Issue Of Uninsured/Underinsured Motorist Coverage (Doc. No. 66) filed on September 9, 2010;

3) Plaintiff Federated Service Insurance Company's Motion For Summary Judgment On The Issue Of Stacking (Doc. No. 67) filed on September 9, 2010;

4) Plaintiff Federated Service Insurance Company's Response In Opposition To Defendant Danny Martinez's Motion For Summary Judgment On Stacking Uninsured Motorist Coverage Under The Federated Service Insurance Company Policy And Combined Memorandum In Support Of Its Motions For Summary Judgment (Doc. No. 68) filed on September 9, 2010;

5) Martinez' Response In Opposition To Federated's 9/9/10 Motion For Summary Judgment On Coverage (Doc. No. 80) filed on November 5, 2010;

6) Martinez' Reply In Support Of His Motion For Summary Judgment On Stacking And Response In Opposition To Federated's Motion For Summary Judgment On Stacking (Doc. No. 81) filed on November 5, 2010;

7) Plaintiff Federated Service Insurance Company's Reply Brief In Support Of Its Motion For Summary Judgment On Coverage (Doc. No. 87) filed on December 1, 2010;

8) Plaintiff Federated Service Insurance Company's Reply Brief In Support Of Its Motion For Summary Judgment On Stacking (Doc. No. 88) filed on December 1, 2010;

9) Martinez' Supplemental Brief In Opposition To Federated's 2010 Motion For Summary Judgment On Coverage (Doc. No. 100) filed on January 31, 2011 with leave of Court; and

2

10) Plaintiff Federated Service Insurance Company's Response To Mr. Martinez's Supplemental Brief On Coverage (Doc. No. 101) filed on February 10, 2011 with leave of Court.

The undisputed facts show that Mr. Martinez was not occupying an insured vehicle when he was injured; therefore, as a matter of law, Mr. Martinez is not covered under the uninsured/underinsured motorist (UM/UIM) provisions of the Commercial Package Policy No. 0634062 (Policy) issued by Federated to Mr. Martinez's employer Capitol Motor Company (Capitol). (Doc. No. 68, Ex. A.)[1] Therefore, the Court will deny in part Martinez's Renewed MSJ and will grant Plaintiff Federated Service Insurance Company's Motion For Summary Judgment On The Issue Of Uninsured/Underinsured Motorist Coverage (Doc. No. 66).

## I.  Standard of Review

Under Fed. R. Civ. P. 56, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (as stated in rule effective Dec. 1, 2010). The movant may meet its Rule 56 burden by pointing out to the court that the non-movant "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Once the movant has met its Rule 56 burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 256 (1986).

When faced with cross motions for summary judgment, the court "[is] entitled to assume

---

[1] Initially, Federated argued in the alternative that Mr. Martinez's losses were excluded from coverage under the Policy because Mr. Martinez was injured while acting within the scope of his employment. In its Reply On Coverage (Doc. No. 87) and in its Supplemental Brief On Coverage (Doc. No. 101), Federated withdrew this argument.

3

that no evidence needs to be considered other than that filed by the parties, but summary judgment is nevertheless inappropriate if disputes remain as to material facts." *James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir.1997); *see also Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979) ("Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another.").

Because the Court's jurisdiction over this case is based on diversity of citizenship, the Court will apply New Mexico substantive law. *Butt v. Bank of America, N.A.*, 477 F.3d 1171, 1179 (10th Cir. 2007). If the state's highest court has not addressed a dispositive legal issue, a federal court must determine what decision the state court would make if faced with the same facts and issues by considering state intermediate appellate court decisions, decisions of other states, federal decisions, and the general weight and trend of authority. *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir.1988).

## II.  Undisputed Facts–Background

### A. Mr. Martinez's Accident and Claim

On May 11, 2005, Mr. Martinez, a non-management sales employee of Capitol, was standing inside of the service building when he was struck by an uninsured/underinsured vehicle driver. (Doc. No. 68, Undisputed Fact 23.) Tragically, Mr. Martinez suffered a severe spinal cord injury and is now quadriplegic. (*Id.*, Undisputed Fact 14.) Mr. Martinez was not occupying a

covered vehicle when he was injured.[2] At the time of Mr. Martinez's accident, Capitol was insured under the Policy, which includes a "Garage Coverage Part" under which Federated covered Capitol for losses arising out of *inter alia* accidents involving specified vehicles. The Garage Coverage Part provides coverage for liability, personal injury, medical payments, and uninsured/underinsured motorist damages. (*Id.*) In January 2006, Mr. Kelly A. Hooks, a Federated claims supervisor, received a letter from Mr. Martinez's attorney Steven Ewing asserting a claim under the Policy on behalf of Mr. Martinez. (Doc. No. 109, Ex. B ¶¶ 2-3.)  On January 23, 2006, Mr. Hooks sent a letter to Mr. Ewing stating that Federated was "in the process of reviewing the policies of insurance issued to Capitol . . . to determine whether or not there is [UM/UIM] coverage which may be of benefit to your client." (Doc. No. 80, Ex. 1.)

Marc Brandt is the general manager for Capitol and is responsible for obtaining all insurance coverage for Capitol. (Doc. No. 68, Undisputed Fact 12.) Dennis Rommann, a senior marketing representative for Federated, worked with Mr. Brandt to acquire Capitol's insurance coverage from Federated. (*Id.*, Undisputed Fact 17.)

### B. The Policy

The New Mexico Uninsured Motorists Coverage Endorsement in the Policy (UM/UIM Endorsement) provides that Federated "will pay all sums the **'insured'** is legally entitled to recover as damages from the owner or driver of an 'uninsured motor vehicle' because of . . .

---

[2] In pleadings and documents of record, neither Federated nor Mr. Martinez specifically set forth as an undisputed fact that Mr. Martinez was not occupying a covered vehicle at the time he was injured. In its recent motions for summary judgment, Federated has asserted that Mr. Martinez is not an "insured" under the UM/UIM provisions of the Policy because he was not occupying a covered vehicle when he was injured. Mr. Martinez has not presented evidence to show that he was occupying a vehicle at the time of his accident. At oral argument, in response to the Court's inquiry, Mr. Martinez's counsel stipulated that Mr. Martinez was not occupying a vehicle when he was injured.

'[b]odily injury' sustained by an 'insured' and caused by an 'accident[.]'" (Doc. No. 68, Ex. A at CP1025) (emphasis added). The UM/UIM Endorsement specifically modifies the Garage Coverage Part. (*Id.* CP1025-1028.)

The UM/UIM Endorsement to the Policy provides the following definition of "insureds" for purposes of UM/UIM coverage:

> Who Is An Insured
> The following are "insureds" for Uninsured Motorists Coverage :
> If the **named insured** is designated in the Declarations as . . .
> . . .
> 2. A . . . **corporation** or another form of organization, then the following are **"insureds"**:
>
>> a. **Any Class 2 "insured"**, meaning the Named Insured is not an individual Named Insured.
>>
>> b. **Anyone other than a Class 1 "insured"** while "occupying" a covered "auto" or a temporary substitute for a covered "auto". . . . **Anyone other than a Class 1 "insured" includes . . . "employees"**, directors or shareholders' . . .;
>>
>> c. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

(*Id.* at CP1026) (emphasis added). Capitol is the named insured under the Policy and is identified as a corporation (*Id.* at CP 0864).

### C. Federated's Denial of Mr. Martinez's Claim And This Lawsuit

Federated denied Mr. Martinez's claim and filed the Complaint For Declaratory Judgment Concerning The Rights And Legal Obligations Arising Out Of A Policy Of Insurance (Doc. No. 1) (Complaint) asserting a single claim for declaratory judgment that Federated had no obligation to pay UM/UIM benefits to Mr. Martinez "pursuant to the terms of the policy issued to Capitol Motor Company." (*Id.* ¶ 21.) In Paragraph 20 of the Complaint, Federated outlined the dispute over Mr. Martinez's claim:

There exists an actual controversy between Federated and Mr. Martinez as to the following matters: **a.** whether the Federated policy provides any uninsured or underinsured motorist coverage **for employees** of Capitol Motor Company, such as Mr. Martinez, on the day of the accident in March [sic] 2005; and **b.** whether **other policy provisions or conditions** in the Federated policy preclude uninsured or underinsured motorist coverage **for Mr. Martinez** arising out of the March [sic] 2005 accident.

(Compl. ¶ 20) (emphasis added).

In his Answer And Counterclaim For Declaratory Judgment And Damages For Personal Injury, Breach Of Contract, Insurance Bad Faith, Negligence, Misrepresentation And Unfair Trade And Insurance Practices (Doc. No. 3) (Answer and Counterclaim), Mr. Martinez alleged that he was covered under the UM/UIM provisions of the Policy, and Mr. Martinez also asserted five counterclaims: Count I entitled "Declaratory Judgment"; Count II entitled "Damages for Personal Injury"; Count III entitled "Breach of Contract"; Count IV entitled "Bad Faith, Violation of the New Mexico Insurance Code and Unfair Practices Act"; and Count V entitled "Negligence." (Ans. & Countercl. at 5-11.)

In Count I of the counterclaims, Mr. Martinez seems merely to ask for a declaration that Mr. Martinez has UM/UIM coverage for his injuries sustained in the May 11, 2005 accident. However, in the *ad damnum* to Count I, Mr. Martinez requests a declaration that the policy "also provided medical payments coverage . . ." It is unclear whether Mr. Martinez claims "medical payments coverage" under the UM/UIM Endorsement or under some other section of the Policy.

Count II appears to be a general claim for damages resulting from the injuries Mr. Martinez suffered as a result of the May 11, 2005 accident. It seems fairly clear from the allegations and request set forth in Count II that these general damages are sought under the UM/UIM Endorsement of the Policy.

Count III can, in a general way, be interpreted to allege simply that Federated breached

7

the Policy by denying Mr. Martinez's claim because the Policy was a binding contract that provided UM/UIM coverage to Mr. Martinez. However, Count III also contains allegations that are couched in terms of a negligent failure to provide the coverage Mr. Martinez expected to have. In the conclusion to Count III, Mr. Martinez requests "the insurance coverage which should have been provided . . ."

Although the allegations under Count IV ramble somewhat and appear to contain a claim of tortious failure to provide expected insurance coverage, in essence Mr. Martinez seems to claim in Count IV that in fact there was insurance coverage which Federated in bad faith denied to him and therefore violated both the New Mexico Insurance Code, NMSA 1978 § 59A-16-1, et seq. and the New Mexico Unfair Practices Act, NMSA 1978 §57-12-1 et seq.

In Count V, Mr. Martinez alleges in a more straightforward way that Federated negligently breached a duty to provide insurance coverage that should have been provided, if it is determined that the language of the Policy does not cover Mr. Martinez's injuries sustained in the May 11, 2005 accident. Because the allegations in the various counts are overlapping, and in some instances appear to be contradictory, the Court is unclear as to precisely which, if any, of Mr. Martinez's counterclaims – other than his claim of negligence – will remain after entry of the rulings in this Memorandum Opinion and Order.

In his Answer and Counterclaim, Mr. Martinez admitted "the allegations of Paragraph[] . . . 20 . . ." of the Complaint, which outline the two bases for Federated's denial of coverage: 1) whether the policy provides any UM/UIM coverage for employees and 2) whether other policy provisions or conditions preclude UM/UIM coverage for Mr. Martinez arising from the accident. (Ans. ¶ 9.)

In the Provisional Discovery Plan (Doc. No. 6), Federated and Mr. Martinez agreed that

8

discovery was to be bifurcated "to allow for the resolution of the **central insurance coverage**

**questions** before conducting discovery into Mr. Martinez's damages or the issues other than

coverage raised by his Counterclaim." (*Id.* at 2.) (emphasis added). The parties were allowed to

perform discovery on all coverage issues, including issues pertaining to the possible stacking, or

aggregating, of insurance coverage. For example, Mr. Martinez's counsel questioned Mr.

Rommann regarding whether Mr. Martinez would be considered a Class 1 or a Class 2 insured

under the Policy. Mr. Rommann testified:

> Q: Would Danny Martinez be a class 1 under the uninsured motorist coverage?
> . . .
> A: Danny would classify as a class 1.
> Q: Is Danny a class 1 or a class 2 or neither under the class – uninsured motorist
> provisions?
> A: Under the uninsured motorist section – . . . he would be classified as a class 1.
> Q: Would he be classified under the class 2 categorization?
> A: No, he would not be.

(Doc. No. 104 Ex. 4, Rommann Dep. 28:1–29:1.)

In Interrogatory No. 8, Mr. Martinez asked Federated to state in detail why Federated

contended there was no UM/UIM coverage for Mr. Martinez, "including a complete explanation

of each policy provision upon which you rely." (Doc. No. 104, Ex. 6.) In response, Federated

stated, "[p]ursuant to endorsement CA-F-93 (11-01), uninsured or underinsured motorist

coverage was not provided to persons other than directors, officers, partners or owners of Capitol

Motor Company." (*Id.*) Federated then quoted part of the endorsement CA-F-93 (11-01) and

concluded that Mr. Martinez "was not covered by uninsured or under insured motorist coverage

under the Capitol Motor Company policy at the time of the accident." (*Id.*) Endorsement CA-F-

93 (11-01) provides that with respect to UM/UIM coverage "NO COVERAGE" was chosen for

all non-management employees. The Court will refer to endorsement CA-F-93 (11-01) as the

"Rejection Endorsement."

In Interrogatory No. 5, Federated asked Mr. Martinez to state the factual and legal basis

for the contention that Mr. Martinez was entitled to UM/UIM coverage on the date of the

accident. (Doc. No. 89, Ex. B.) In response, Mr. Martinez stated that he was

> insured under the insurance policy or policies issued by Federated and the case law in
> New Mexico and he is entitled to uninsured motorist coverage. There is no valid
> exclusion and/or rejection of uninsured motorist coverage. The purported exclusion relied
> on by Federated creates an internal inconsistency or irreconcilable conflict and therefore
> does not exclude Danny Martinez as an insured. If it is not clear that Mr. Martinez is an
> insured under the policy or policies then the policies are ambiguous and any ambiguity
> must be resolved in his favor and in favor of coverage for Mr. Martinez.

(Doc. No. 89, Ex. B p. 2.)

### D.  2007 Motions for Summary Judgment

On May 25, 2007, Federated moved for summary judgment (Doc. Nos. 24, 25) asking the

Court to find that as a matter of law Mr. Martinez is not covered under the UM/UIM provisions

of the Policy because through the Rejection Endorsement, Capitol rejected UM/UIM coverage

for all of its non-management employees. Also on May 25, 2007, Mr. Martinez filed a motion

for summary judgment (Doc. Nos. 26, 27) asking the Court to rule that as a matter of law Mr.

Martinez "has uninsured motorist coverage under the insurance policy issued by Federated to

Martinez' employer . . ." for injuries Mr. Martinez suffered from the May 11, 2005 accident.

(Doc. No. 27 at 1.) In his 2007 motion for summary judgment, Mr. Martinez argued that the

Rejection Endorsement was ineffective under New Mexico law to reject UM/UIM coverage for

Capitol's non-management employees. Mr. Martinez also asked the Court to find that the Policy

"includes UM coverage for all insureds." (*Id.* at 12.) Under New Mexico law, when an insurer

fails to obtain an effective written rejection of UM/UIM coverage, the court will "read into" a

policy UM/UIM coverage in an amount equal to the amount of liability coverage provided in a

policy. *Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, 149 N.M. 162, 245 P.3d 1214 and *Romero v. Dairyland Ins.* Co., 803 P.2d 243, 246 (N.M. 1990).

On August 31, 2007, the Court entered a Memorandum Opinion and Order (Doc. No. 38) in which the Court granted partial summary judgment in favor of Federated.[3] The Court determined that the Rejection Endorsement was sufficient under New Mexico law to reject UM/UIM coverage for all of Capitol's non-management employees. The Court concluded that since UM/UIM coverage had been rejected for non-management employees, Mr. Martinez was not eligible for coverage under the UM/UIM provisions of the Policy. Upon request by both parties, the Court certified its ruling as final to allow Mr. Martinez to appeal the ruling. (Doc. Nos. 40-42.)

### E. The Reversal of the Court's Ruling on the 2007 Motions for Summary Judgment

On December 17, 2007,  Mr. Martinez filed an appeal with the Tenth Circuit Court of Appeals. The Court of Appeals certified the following question to the New Mexico Supreme Court: "[f]or a valid rejection of UM/UIM coverage under New Mexico law, must that rejection be written, signed by the insured, and attached to the policy?" *Federated Serv. Ins. Co. v. Martinez*, No. 07-2293, 2008 WL 5062783, *1 (10th Cir. Dec. 1, 2008). The New Mexico Supreme Court accepted the certified question and consolidated the case with an appeal from the New Mexico Court of Appeals that involved substantially the same issue. *See Markstadt v. Lockheed Martin Corp.*, 2010-NMSC-001, 147 N.M. 678, 228 P.3d 462.  On November 19,

---

[3] The Court granted Federated partial summary judgment and dismissed all but one of Martinez's counterclaims. (Doc. No. 38 at 1.) The Court did not rule on Martinez's fifth counterclaim asserting that Federated was negligent in not providing UM/UIM coverage to Capitol for all of its employees. (*Id.* at 2.)

2009, the New Mexico Supreme Court answered by stating that UM/UIM coverage must be included in all New Mexico liability policies unless the insurer has "obtained a written rejection of UM/UIM coverage from the insured. . ." *Id.* 2010-NMSC-001 ¶ 4.

After the New Mexico Supreme Court issued its answer to the certified question, the Tenth Circuit Court of Appeals asked Federated and Mr. Martinez to file briefs addressing the effect of the New Mexico Supreme Court's answer on Mr. Martinez's appeal. Mr. Martinez filed a brief arguing that under *Marckstadt*, an insurer must obtain a written rejection of UM/UIM coverage from the insured, and since Federated had obtained no written rejection from Capitol of UM/UIM coverage for non-management employees, UM/UIM coverage must be "read into" the Policy for all non-management employees in an amount equal to the liability limit of the Policy. Federated argued that the Rejection Endorsement and a Policy Adjustment Request form issued by Mr. Rommann, at the direction of Capitol's general manager Marc Brandt, were sufficient to meet the requirement of a written rejection.[4] Federated also attempted to present on appeal other documents that had not been presented to this Court, such as yearly client review forms, to show that Federated had obtained a written rejection of UM/UIM coverage from Capitol. The Tenth Circuit rejected the documents:

> [I]f Federated had intended to avoid summary judgment by relying on the existence of the yearly client review forms, it should have presented those forms and made the

---

[4] The Policy Adjustment Request form was included in the record, and this Court recognized that as a result Federated credited Capitol for the $505 premium amount Capitol had previously paid for UM/UIM coverage for non-management employees. However, this Court did not base its decision on the Policy Adjustment Request form because after the Policy Adjustment Request was issued at Capitol's request, Capitol executed another UM/UIM Endorsement, which indicated that $60,000 in UM/UIM coverage was available to non-management employees. This action contradicted Capitol's claim that it rejected UM/UIM coverage for non-management employees. In the final analysis, the Court found that the Rejection Endorsement was a valid rejection of uninsured motorist coverage under New Mexico law. (Doc. No. 38 at 9.)

argument it now attempts to make for the first time. Federated is not entitled to support or defend against a motion for summary judgment on one theory, and when that theory proves unsuccessful, to supplement the record and pursue a different theory on remand.

*Federated Serv. Ins. Co. v. Martinez*, No. 07-2293, 385 Fed. Appx. 845, 849 (10th Cir. July 08, 2010) (unpublished opinion).

The Tenth Circuit Court of Appeals reversed the summary judgment in favor of Federated and remanded the case to this Court for "further proceedings consistent with this order and judgment." *Id.* at 847.

### F.  Court Rulings On Remand

On remand, this Court asked Federated and Mr. Martinez to submit a form of order that implemented the Tenth Circuit's decision.  On August 2, 2010, the Court issued a Memorandum Opinion and Order (Doc. No. 58) granting summary judgment in favor of  Mr. Martinez and denying summary judgment to Federated. (*Id.* at 3.)  On August 2, 2010, the Court also entered a Partial Summary Judgment (Doc. No. 59) ruling that Mr. Martinez "has uninsured motorist coverage for the May 11, 2005 accident under the Commercial Package Policy No. 0634062 issued by Plaintiff Federated Service Insurance Company insuring Capitol Motor Company." (*Id.* at 1.)

On August 6, 2010, Federated filed Plaintiff Federated Service Insurance Company's Motion For Reconsideration Of The Memorandum Opinion And Order And Partial Summary Judgment Entered August 2, 2010 (Doc. No. 60).  On August 17, 2010,  Mr. Martinez filed Defendant/Counter-Claimant Danny Martinez's Response to Plaintiff Federated Service Insurance Company's Motion For Reconsideration Of The Memorandum Opinion and Order And Partial Summary Judgment Entered August 2, 2010 (Doc. No. 61).  On September 3, 2010, Federated filed a Reply In Support of Plaintiff Federated Service Insurance Company's Motion

13

For Reconsideration Of The Memorandum Opinion And Order And Partial Summary Judgment Entered August 2, 2010 (Doc. No. 64).

On October 20, 2010, the Court granted Federated's Motion For Reconsideration and entered an Amended Memorandum Opinion and Order (Doc. No. 76), and an Amended Partial Summary Judgment (Doc. No. 77) (together, October Orders). In the October Orders, the Court withdrew its August Memorandum Opinion and Order (Doc. No. 60) and Partial Summary Judgment (Doc. No. 61). The Court held that Federated had failed to obtain a legal rejection of UM/UIM coverage from Capitol, but the Court withdrew its August 2, 2010 rulings recognizing that the Court had not yet decided whether Mr. Martinez is covered for his specific losses under the UM/UIM provisions of the Policy. (Doc. No. 76 at 3.)

### G. Pending Motions For Summary Judgment

Since UM/UIM coverage has been "read into" the Policy for all non-management employees, the issue now is whether the Policy provides coverage for Mr. Martinez under the terms of the UM/UIM Endorsement. In its motion for summary judgment (Doc. No. 66), Federated argues that Mr. Martinez does not fit within the definition of an "insured" under the UM/UIM Endorsement because he was not occupying a covered vehicle at the time of the accident. In Martinez's Renewed MSJ (Doc. Nos. 103 & 104) and Mr. Martinez's response to Federated's motion for summary judgment, Mr. Martinez makes primarily three arguments. First, Mr. Martinez argues that Federated has waived or should be estopped from asserting that Mr. Martinez is not an "insured" under the UM/UIM provisions of the Policy because Federated failed to raise the issue in its motion for summary judgment filed in 2007. Second, Mr. Martinez asserts that under the Policy's liability provisions he is a Class 1 insured, which entitles him to UM/UIM coverage whether or not he was occupying a covered vehicle. And third, Mr. Martinez

contends that the definition of an "insured" under the UM/UIM Endorsement is ambiguous and must be construed in favor of coverage for his losses.

### III.     Federated is not barred from asserting that Mr. Martinez lacks coverage under the UM/UIM Endorsement of the Policy

Mr. Martinez contends that Federated should be barred from arguing that he does not fit within the definition of "insured" in the UM/UIM Endorsement because he was not occupying a covered vehicle at the time of his accident. Mr. Martinez maintains that Federated initially denied his claim for only one reason, that Capitol had rejected UM/UIM coverage for all of its non-management employees, and that Federated unreasonably delayed raising this new reason for denying his claim. In paragraph 20 of the Complaint, Federated outlined two bases for its denial of coverage: 1) the Rejection Endorsement and 2) "other policy provisions or conditions" in the Policy that preclude UM/UIM coverage for Mr. Martinez. (Compl. ¶ 20). In his Answer and Counterclaim (Doc. No. 3), Mr. Martinez contended that he was at all times insured under the Policy. In Federated's Reply to Martinez's counterclaim (Doc. No. 4), Federated relied on the Rejection Endorsement and asserted an affirmative defense alleging that Mr. Martinez cannot recover under ". . . the terms, conditions, limitations and exclusions contained in the policy . . . ." (*Id.* at 7.)

### A. Waiver and Estoppel

Generally, New Mexico courts define waiver as the intentional relinquishment or abandonment of a known right. *Young v. Seven Bar Flying Serv., Inc.*, 685 P.2d 953, 956 (N.M. 1984). However, an insurer may waive a defense if the insurer unreasonably delays notifying an insured that the insurer stands on a defense. *Larson v. Occidental Fire & Cas. Co.*, 446 P.2d 210, 212 (N.M.1968). In *Larson*, the New Mexico Supreme Court stated  "[o]rdinarily, when an

15

insurer, with knowledge of all pertinent facts, denies liability upon a specific ground, all other grounds are deemed to be waived, . . . [b]ut waiver is conditioned on showing of detriment or prejudice." *Id.* at 212 (citing 16A Appleman, *Insurance Law and Practice*, § 9260; 45 C.J.S. *Insurance* § 707). The *Larson* claimants had been injured in Arizona in an accident with a truck. They filed suit against the truck's insurer Occidental Fire & Casualty Company (Occidental). The Occidental policy excluded coverage for trucks that were leased to others and for trucks that were driven outside of New Mexico. *Id.* Occidental initially raised only the "leased vehicle" exclusion but later asserted the second exclusion as well. The court concluded that Occidental did not waive the second exclusion because the court found no indication that "the insured acted upon the announced ground or incurred any expense, loss or detriment in reliance upon it." *Id.*

Mr. Martinez also cites *Smith v. Orion Ins. Co.,* a case in which the Tenth Circuit Court of Appeals, applying California law, rejected an argument that the insurer was barred from asserting that the insured had breached the named pilot provision in an insurance policy covering a helicopter. 298 F.2d 528, 533 (10th Cir. 1961). The court found that the insurer did not unreasonably delay even though the insurer waited two months before it informed the insured of its reliance on the named pilot provision. *Id.*

Mr. Martinez compares this case to *Larson* and *Smith* and argues that Federated waived its argument that Mr. Martinez is not an "insured" under the UM/UIM Endorsement because Federated relied solely on the Rejection Endorsement in its 2007 summary judgment motion. Mr. Martinez contends that Federated delayed until after he had appealed this Court's ruling on the Rejection Endorsement issue to the Tenth Circuit and then argued that Mr. Martinez was not an "insured" under the UM/UIM Endorsement. Mr. Martinez notes that the delay in this case was much longer than the delay in *Smith* and asserts that he, unlike the claimants in *Larson*, was

16

prejudiced by litigating the Rejection Endorsement issue for 5 years in this Court and on appeal. Mr. Martinez maintains that if Federated had brought up the "occupying a vehicle" condition in 2007, all of the issues related to coverage would have been decided much sooner.

Federated counters that from the time that Mr. Martinez asserted his claim, its representatives and attorneys maintained that he was not eligible for UM/UIM coverage because coverage was rejected for non-management employees and also because Mr. Martinez was not occupying a covered vehicle at the time of his accident. Kelly Hooks, a Federated claims representative who handled Mr. Martinez's claim, stated under oath:

> I called Mr. Ewing [Mr. Martinez's counsel] in May 2006 to verify that he received a copy of the policy. During that conversation I told Mr. Ewing that I did not believe that Mr. Martinez qualified as an insured under the "Who Is An Insured" provision in the UM/UIM Endorsement included with Capitol Motor policy because Mr. Martinez was not occupying any vehicle at the time he was injured.

(Doc. No. 109, Ex. B, Hooks Decl. ¶ 6.)

This Declaration by Mr. Hooks is not controverted by admissible evidence.[5] Based on Federated's Complaint, its Reply to Mr. Martinez's Answer and Counterclaim, and Mr. Hooks' Declaration, the Court concludes that Federated did not waive the defense that Mr. Martinez lacks coverage because he was not occupying a covered vehicle at the time of the accident.

But, even if Federated unreasonably delayed in asserting that Mr. Martinez was not an "insured" under the UM/UIM Endorsement, Federated is not barred from raising this defense.

---

[5] The only admissible evidence of record is Mr. Hooks' Declaration that he he informed Mr. Ewing early in the case of Federated's reliance on the "occupying a covered vehicle" condition in the UM/UIM Endorsement. At oral argument on the Renewed MSJ, Mr. Martinez's counsel, Ms. Santillanes, stated that Mr. Ewing's testimony would contradict Mr. Hooks' Declaration. However, no affidavit or declaration from Mr. Ewing was presented to the Court. Ms. Santillanes' statement at oral argument is insufficient to create a fact issue as to whether Mr. Hooks notified Mr. Ewing of Federated's reliance on the "occupying a covered vehicle" condition.

*State Farm Mut. Ins. Co. v. Gonzales*, 491 P.2d 513, 516 (N.M. 1971). New Mexico follows the majority rule that the doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy. *Jackson Nat'l Life Ins. Co. v. Receconi*, 827 P.2d 118, 127 n.9 (N.M. 1992). Thus, the Court cannot hold that Federated has waived or is estopped from asserting its argument that Mr. Martinez was not covered as an "insured" under the UM/UIM Endorsement of the Policy because the effect of the waiver or estoppel would be to create coverage otherwise not available under the Policy.

### B. Waiver or Estoppel And The Burden of Proof

Mr. Martinez has the burden to prove that he is covered under the Policy. *Chronister v. State Farm Mut. Auto. Ins. Co.*, 381 P.2d 673, 675 (N.M. 1963) (stating that the burden of proof is on the claimant to establish a policy's coverage of the injurious event). In 2007, Mr. Martinez argued that Capitol's rejection of UM/UIM coverage was invalid, and Mr. Martinez asked for judgment as a matter of law "that he has uninsured motorist coverage for the collision which occurred on May 11, 2005 . . ." (Doc. No. 26 at 1.) In 2007, Mr. Martinez could not have obtained a judgment granting coverage until he proved that he was covered under the  the UM/UIM Endorsement. Now, Mr. Martinez contends that Federated should be barred from arguing that, even though UM/UIM coverage was not validly rejected, Mr. Martinez is not an "insured" under the UM/UIM Endorsement because he did not occupy a covered vehicle when he was injured. But, in 2007 it was not Federated's burden to disprove coverage as an alternative to the rejection argument. If this Court had ruled in 2007 that UM/UIM coverage was not effectively rejected, Mr. Martinez would not have been immediately entitled to a judgment that he was covered for his losses; Mr. Martinez still had the burden of proving coverage.

From the inception of this case through the filing of the summary judgment motions in

2007, both Federated and Mr. Martinez focused on the legal issue of whether the Rejection Endorsement was sufficient under New Mexico law to reject UM/UIM coverage for all of Capitol's non-management employees. Neither Federated nor Mr. Martinez specifically addressed whether, if rejection were ineffective, the UM/UIM Endorsement covered or did not cover Mr. Martinez for his losses. However, the burdens of proof have remained the same since this case was filed in 2006. Federated had the burden to show that the Rejection Endorsement was effective, and Mr. Martinez had and still has the burden to show that he is covered under the UM/UIM Endorsement if Capitol did not properly reject UM/UIM coverage for all non-management employees. *Chronister v. State Farm Mut. Auto. Ins. Co.*, 381 P.2d at 675. Federated should not be barred from holding Mr. Martinez to his original burden of proof to show coverage. Even though UM/UIM coverage for all non-management employees has been "read into" the Policy, Mr. Martinez must still meet his burden of proof to show that he is an "insured" under the Policy.

## C. Discovery Was Not Limited To The Rejection Endorsement Issue

In addition, the parties did not limit discovery to the Rejection Endorsement issue. Mr. Martinez's counsel asked Mr. Rommann at a deposition whether he thought Mr. Martinez was a Class 1 or Class 2 insured under the UM/UIM Endorsement's definition of "insureds." At oral argument on March 31, 2011, Mr. Martinez's counsel stated that Mr. Rommann was questioned about Mr. Martinez's Class 1 or Class 2 insured status not to determine coverage but to determine whether Mr. Martinez could "stack" UM/UIM coverages. This inquiry, however, necessarily involved an examination of the term "insured" in the UM/UIM Endorsement and the requirement that an "insured" occupy a covered vehicle at the time of an accident. Mr. Martinez cannot argue that he was surprised by the requirement, which involved information that Mr.

19

Martinez already had--Mr. Martinez knew that he was not occupying a vehicle at the time he was injured.

### D. No Statutory Violation Occurred

Mr. Martinez argues that Federated should be barred from asserting the "occupying a vehicle" condition because Federated engaged in an unfair or deceptive practice in violation of the New Mexico Insurance Code:

> Any and all of the following practices with respect to claims, by an insurer or other person, **knowingly committed or performed with such frequency as to indicate a general business practice**, are defined as **unfair and deceptive practices** and are prohibited:
>> . . .
>> N. failing to **promptly provide an insured a reasonable explanation** of the basis relied on **in the policy** in relation to the facts or applicable law for **denial of a claim** or for the offer of a compromise settlement[.]

NMSA 1978 § 59A-16-20(N) (1983) (emphasis added). Mr. Martinez states that Federated violated this statute because it failed to promptly notify him that it was relying on the "occupying a vehicle" condition to deny coverage under the UM/UIM Endorsement. Mr. Martinez claims that he first learned that Federated was going to rely on the "occupying a vehicle" condition when in August 2010 the Court sent a letter to both parties' counsel asking Federated to specify the policy provisions on which it relied to deny coverage. Mr. Martinez asserts that because the Court had to ask Federated's counsel which provisions or conditions Federated claimed precluded coverage, the "occupying a vehicle" condition was clearly a surprise that prejudiced him.

Federated counters that the undisputed facts show that Federated did not violate NMSA § 59A-16-20(N) and that the letter from the Court does not prove that Martinez was prejudiced. The Court agrees. In the Complaint, Federated outlined two bases for denial of Martinez's claim:

20

1) rejection of UM/UIM coverage for non-management employees; and 2) other policy provisions or conditions. Moreover, no evidence was presented indicating that Federated had a "general business practice" of denying claims without asserting all reasons for denying coverage. For these reasons, Federated did not violate § 59A-16-20(N). However, even if Federated violated this provision, NMSA § 59A-16-30 provides a remedy for violations of § 59A-16-20 and that remedy does not include forfeiture of the right to defend a claim. *See* NMSA 1978 § 59A-16-30 (1983).

In conclusion, Mr. Martinez has always had the burden to prove that he is covered under the UM/UIM Endorsement. Even though Federated initially moved for summary judgment on the Rejection Endorsement issue, Mr. Martinez retained the burden of proving that he was covered under the Policy. Therefore, nothing bars Federated from asserting that Mr. Martinez is not an "insured" under the UM/UIM Endorsement because Mr. Martinez was not occupying a covered vehicle at the time of his accident.

### IV. Mr. Martinez Is Not Covered Under The Policy

In New Mexico, ". . . a person must be insured under an insurance policy to be entitled to receive benefits pursuant to the policy." *Rehders v. Allstate Ins. Co.*, 2006-NMCA-058, ¶ 13, 139 N.M. 536, 135 P.3d 237, *cert. granted*, 2006-NMCERT-5 (N.M. May 23, 2006), *app. dismissed*, 2007-NMCERT-7 (N.M. Feb 13, 2007). New Mexico courts distinguish between a named insured in a policy, classified as a Class 1 insured, and others who might qualify for coverage, classified as Class 2 insureds. *Archunde v. Int'l Surplus Lines Ins. Co.*, 905 P.2d 1128, 1131 (N.M. Ct. App. 1995) (citing *Herrera v. Mountain States Mut. Casualty Co.,* 846 P.2d 1066, 1067 (1993) (defining Class I and Class II insureds)). A Class 1 insured is entitled to UM/UIM coverage "no matter where [he is] or in what circumstances [he] may be." *Gamboa v.*

21

*Allstate Ins. Co.*, 726 P.2d 1386, 1388 (N.M. 1986) (comparing Class II insureds who are covered for UM/UIM losses by virtue of occupying a covered vehicle). A person who is not a Class 1 insured, can be covered for UM/UIM losses if the person occupied a covered vehicle or coverage for the person is specifically provided under the unambiguous terms of the policy. *Id.* Whether a person is covered by a UM/UIM provision is a question of law for the courts to decide. *Id.*

### A. Mr. Martinez Is Not A Class 1 Insured

Mr. Martinez contends that under the **liability** provisions of the Policy, all employees are defined as Class 1 insureds, and as a Class 1 insured employee, he is covered for UM/UIM losses no matter where he was located when he was injured. *Id.* Mr. Martinez points to certain provisions in the Garage Coverage Form (Doc. No. 104, Ex. 3), which state,

> SECTION II - LIABILITY COVERAGE
>
> A. Coverage
>    1. "Garage Operations" - Other Than Covered "Autos"
>       a. We[6] will pay all sums an **"insured"** legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies caused by an "accident" and resulting from "garage operations" other than the ownership, maintenance or use of covered "autos".

(Doc. No. 104 Ex. 3, CP 0988) (emphasis added). In the Garage Coverage Form the definition of

---

[6] "We" refers to Federated.

**"Who Is An Insured"** is,

> b.  The following are **"insureds"** for "garage operations" other than covered "autos":
>     (1) You.[7]
>     (2) Your . . . "**employees**", directors or shareholders but only while acting within the scope of their duties.

(*Id.* Ex. 3, CP 0990) (emphasis added). Mr. Martinez also relies on the one-page "Garage Coverage Part-Dealer's Supplementary Schedule." (Doc. No. 104, Ex. 2, CP 0981.) Under Item Four: Liability Coverage Premium Basis, several "Classes of Operators" are set out in a chart and are assigned different numerical ratings to determine the premium for liability coverage. (*Id.*) "Employees Furnished Autos" are designated as "Class Ia"; "Salespersons & GM Not Furnished Autos" are designated as "Class Ib"; "All Other Employees" are designated as "Class Ic". (*Id.*) The chart designates all "non-employees" as "Class II." (*Id.*) Under this schedule, Mr. Martinez presumably would be classified in Class Ib, "Salespersons . . .  Not Furnished Autos". (*Id.*) And under the definition of "Who Is An Insured" in the **liability** provisions of the Policy, Mr. Martinez, as an "employee" would fit within the definition of an "insured" for "garage operations" other than covered "autos."

Federated asserts that the definitions applicable to **liability** coverage do not govern UM/UIM coverage; instead, the specific definition of "insureds" in the UM/UIM Endorsement is controlling. The Garage Coverage Form of the Policy states, "[v]arious provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." (Doc. No. 68, Ex. A, 0987.) And, at the top of the UM/UIM Endorsement these words are printed in bold type:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

---

[7] This refers to the named insured, "Capitol Motor Company."

(*Id.* 1025.)

The UM/UIM Endorsement states, "[w]ith respect to coverage provided by this endorsement, the provisions of the Coverage Form apply **unless modified by the endorsement**." (*Id*) (emphasis added). Therefore, the UM/UIM Endorsement's definition of "insureds" expressly overrides the definition of "insureds" in the Garage Coverage Part for purposes of UM/UIM coverage.

Mr. Martinez points to the deposition testimony of Mr. Rommann quoted *supra* on p. 9 of this Memorandum Opinion and Order. Mr. Rommann, the Federated senior marketing representative who sold Capitol the Policy, testified that under the definition of "insureds" in the UM/UIM Endorsement, Martinez would be considered a Class 1 insured. (*Id.* Rommann Dep. 28:1-29:1.)

Federated counters that the testimony of Mr. Rommann, who is not a legal expert, is not dispositive evidence of the meaning of "insured" as defined in the UM/UIM Endorsement. Federated contends that the meaning of "insured" under the UM/UIM Endorsement is a question of contract interpretation for the Court. *Rehders*, 2006-NMCA-058, ¶ 3 (stating that coverage, ". . . presents a question of law."); *see also Bonham v. Indemnity Ins. Co. Of N. Am.,* 507 F. Supp. 2d 1196, 1212 (D.N.M. 2007) (Johnson, J.) (stating that insurance agent's post-accident statements that he believed plaintiff was a Class 1 insured could not create an ambiguity because the statements do not shed light on the parties' intentions at the time they entered the agreement). Federated also contends that Mr. Rommann was confused by Mr. Martinez's counsel who repeatedly questioned him regarding Mr. Martinez's Class 1 or Class 2 status. In his Declaration, Mr. Rommann stated,

6.  Mr. Ewing [Martinez's counsel] then asked me whether employees are "class-one" or "class-two" insureds under this policy language [referring to the UM/UIM definition of "insureds"]. In response, I told him that employees [sic] I understand this provision to define employees as "anyone other than a class one insured" . . .

7.   Mr. Ewing later asked the same question several more times. During this questioning, I became confused and inadvertently agreed when Mr. Ewing asked whether the above provision designates employees as class-one insureds. I do not believe this interpretation is correct. I believe the above provision from the UM/UIM Endorsement specifies that employees are not class-one insureds and therefore are entitled to UM/UIM coverage only when occupying a covered auto.

(Doc. No. 109, Ex. A ¶¶ 6-7.)

Federated asserts that under the unambiguous definition of "insured" in the UM/UIM Endorsement, Mr. Martinez is not an "insured" who is covered for his injuries from the May 11, 2005 accident because he was not occupying a covered auto at the time he was injured. Federated cites an opinion by the New Mexico Court of Appeals interpreting an identical definition of "insureds" in a UM/UIM endorsement. *See Rehders*, 2006-NMCA-058.

In *Rehders*, the New Mexico Court of Appeals addressed whether a child, who was severely injured by an uninsured driver, was entitled to stacked UM/UIM benefits under a policy issued by Allstate to his parents' corporation. The parents were principals of the corporation that was the named insured in the policy. The definition of "insureds" in the UM/UIM provisions of the *Rehders* policy was the same as the definition of "insureds" in Federated's UM/UIM Endorsement. *Id.* ¶ 16. The *Rehders* court determined that under this definition the child did not qualify as a "Class 1" insured because "the 'named insured' is not an individual, but the corporation[.]" *Id.* at ¶ 18. In addition, the *Rehders* court found that any other "insured" falls into "Class 2," which is specifically described as "a partner of the partnership, a member of the limited liability company and **employees**, directors, and stockholders of the corporation . . ." *Id.* at ¶ 19 (emphasis added).

25

Applying the reasoning in *Rehders* to this case, Mr. Martinez, as a Capitol employee, cannot be a Class 1 insured because the "named insured" is not an individual, but is a corporation. *Id.* at ¶ 18. Instead, Mr. Martinez, as an employee, would be a "Class 2" insured or an "other than Class 1 insured" as stated in the UM/UIM Endorsement. *Id.* at ¶ 19. And, as a "Class 2" or "other than Class 1 insured," Mr. Martinez would be covered for UM/UIM losses only if he was occupying a covered vehicle at the time of his injury.

Another federal judge applying New Mexico law has followed the decision in *Rehders*. In *Allstate Indemnity Co. v. Gonzales*, 582 F. Supp. 2d 1339 (D.N.M. 2008), United States Magistrate Judge Lourdes A. Martinez, acting by consent as a district judge, ruled that an officer of an insured corporation was not entitled to UM/UIM benefits because he was not occupying an insured vehicle when he was killed in an accident with an uninsured driver. *Id.* at 1345. The case involved a business automobile policy issued by Allstate Indemnity Co. (Allstate) to Alternative Home Health Care, Inc. (Alternative). Mr. Gonzales was an officer of Gonzales Family, Inc., which, along with Alternative, was a closely held corporation owned by members of Gonzales's family. The Alternative insurance policy covered only one vehicle owned by Alternative. *Id.* at 1342. Although the vehicle covered under the Allstate policy was Mr. Gonzales' primary vehicle, Mr. Gonzales was driving another vehicle at the time of the accident. Notably, the undisputed facts showed that the representatives of Gonzales Family, Inc. expected that Mr. Gonzales would be the primary insured under the Alternative policy. *Id.* However, Judge Martinez declined to interpret the Alternative policy to provide Mr. Gonzales coverage as a named insured. Judge Martinez noted, "[t]he Policy clearly states that the 'Named Insured' is 'Alternative Home Health Care' which is a 'Corporation.'" *Id.* at 1343. Judge Martinez, who had been a New Mexico state court judge before becoming a federal judge, observed that if no

controlling state decision exists, federal courts must attempt to predict what the state's highest

court would do. *Id.* Judge Martinez supported her decision by citing *Rehders* and opinions of the

New Mexico Supreme Court and the New Mexico Court of Appeals denying UM/UIM benefits

to people who under the terms of the policies were neither named insureds nor driving insured

vehicles. *Id.* at 1343-44 (citing *Herrera*, 846 P.2d at 1068; *Rehders*, 135 P.3d at 244; and

*Archunde*, 905 P.2d at 1129-32).[8]

### B.  The UM/UIM Endorsement Is Not Ambiguous

Courts resolve questions regarding the provisions of  insurance policies under the

principles that govern the interpretation of contracts. *Rummel v. Lexington Ins. Co.*, 1997-

NMSC-041 ¶ 18, 123 N.M. 752, 945 P.2d 970. A court may consider an insurance policy

---

[8] In *Herrera*, the New Mexico Supreme Court ruled that under a business policy issued to Rader Awning and Upholstering, Inc. (Rader), only Rader was the named insured and the definition of an "insured" did not include Rader's employees. *Id.* at 1068. The court affirmed a decision denying UM/UIM benefits to an employee's daughter, Amanda, who was injured in an accident while occupying a vehicle owned by the employee. The Herreras asserted that, since the policy's "named insured" was a corporation, all of the corporation's employees should be considered "named insureds" or "Class 1 insureds" for UM/UIM bodily injury coverage, presumably because a corporation cannot suffer bodily injury. *Id.* at 1067. The Herreras further contended that since Amanda was a resident of the household of her "named insured" father, she also was a Class 1 insured. *Id.* The court rejected this argument finding that the language of the policy unambiguously defined the named insured as a corporation, and the definition could not be stretched to include employees and their family members as Class 1 or "named insureds." *Id.* at 1068. In addition, since the employee's daughter was not occupying a covered vehicle, the court stated that she was not a Class 2 insured under the policy. *Id.*

In *Archunde*, the New Mexico Court of Appeals held that a school bus driver was not entitled to uninsured motorist coverage because she was not an "insured" under a policy issued to a school bus company. The policy's named insureds were Saavedra School Bus Company, a trade name and not a corporate entity, and Jose A. Saavedra, individually. The policy defined an "insured" as the individual named insured, and the individual named insured's "family members." The court ruled that an employee of the named insured was not covered as an insured under this definition because the policy expressly excluded any coverage for bodily injury to "[a]n employee of the 'insured' arising out of and in the course of employment by the 'insured.'" *Id.* at 1131-32.

27

ambiguous when separate sections of a policy appear to conflict with one another, when the language of a provision is susceptible to more than one meaning, when the structure of the contract is illogical, or when a particular matter of coverage is not explicitly addressed by the policy. *Id.* ¶ 19. In New Mexico, courts may "consider extrinsic evidence in determining whether an ambiguity exists in the first instance, or to resolve any ambiguities that a court may discover." *Ponder v. State Farm Mut. Auto. Ins. Co.*, 2000-NMSC-033, ¶ 13, 129 N.M. 698, 12 P.3d 960. In *Rummel* the court stated,  [i]f ambiguities cannot be resolved by examining the language of the insurance policy, courts may look to extrinsic evidence such as the premiums paid for insurance coverage, the circumstances surrounding the agreement, the conduct of the parties, and oral expressions of the parties' intentions." 1997-NMSC-041, ¶ 21.

In general, New Mexico courts resolve ambiguities in a personal insurance policy against the insurer. *Jaramillo v. Providence Washington Ins. Co.*, 871 P.2d 1343, 1347 (N.M. 1994). However, when a claimant is a third party and not named as an insured, the rule of construction is different. *Id.* The issue of whether a third party is insured often arises in cases involving a named insured that is a corporation or other legal entity and a claimant who is an individual affiliated with the insured entity, such as an employee.  Because third persons are not parties to a contract of insurance, they are not automatically entitled to a construction in favor of coverage. *Id.* To determine whether a third party beneficiary is entitled to coverage, courts give effect to the stated intentions of the premium-paying insured and the insurer, if they agree as to what they intended. *Id.* at 1348.

The record shows that Mr. Brandt, general manager of Capitol, intended to cover his employees for losses from accidents with uninsured or underinsured motorists not under the Garage Coverage Part, which included the UM/UIM Endorsement, but under Worker's

28

Compensation coverage:

> Q. . . . what was the intent of Capitol Motor back in 2005? Did Capitol Motor intend to provide UM coverage for nonmanagement employees at Capitol Motor?
>
> A. You know, as a business director, I certainly want to be insured properly without layering insurance and paying for products that I don't need.
>
> Now, when – when I think of uninsured motorists and I think of situations, I assume one of my employees showing a car, I assume one of my people in my service department driving a car after it's been repaired, and **if those employees of mine are on the roadway and are engaged in an accident, Workmen's Comp is primary. So as a result of that, I had Workmen's Comp for uninsured motorists.**

(Doc. No. 101, Ex. A Brandt Dep. 19:9-22) (emphasis added).

When asked about whether he considered UM/UIM coverage for non-management

employees, Mr. Brandt testified:

> So, you know, I'm trying to figure out why I did what I did. And, again, **Workmen's Compensation, from my perspective, would have been an uninsured motorists protection for my employees**, because I would– I perceived and believe that in the course of their duties at Capitol Motor Company, if they were struck by an uninsured motorist– I perceived and believed that the Workmen's Compensation policy would trigger and the garagekeepers liability would protect the automobile.

(*Id.* 53:8-22) (emphasis added).

Mr. Brandt further testified:

> Well, you know, as–you know, when you buy uninsured motorists or underinsured motorists, me, as an operator of the company, you know, perceive and believe that you're suspecting that you're getting something where there's an automobile accident with two different automobiles.
>
> You know, unfortunately, it never did get across in my mind that you would need uninsured motorists because of a car struck one of my employees in the building. So, it was inconceivable to me.

(*Id.* 57:4-13.)

Mr. Brandt's testimony shows that even if the Policy could be considered ambiguous,

and the Court does not so find, Mr. Brandt on behalf of Capitol intended to provide insurance

coverage for his employees for losses caused by accidents with uninsured or underinsured vehicle drivers through Worker's Compensation insurance coverage and not through UM/UIM coverage provided in the Policy. Mr. Brandt's testimony also shows that he intended to primarily cover his employees for injuries suffered while they were driving or occupying vehicles owned by Capitol, sold by Capitol, or repaired by Capitol.[9]

Mr. Martinez argues that the definition of "insured" in the UM/UIM Endorsement and other provisions of the Policy are ambiguous and must be construed against Federated and in favor of coverage for his injuries. Mr. Martinez relies on the dissenting opinion in *Rehders* written by the Honorable New Mexico Court of Appeals Judge Cynthia Fry. Judge Fry found the same definition of "insureds" ambiguous. Judge Fry stated that in the definition, the insurer, ". . . tried to establish two classes of insureds by reference to whether the named insured is an individual or a business organization, but it failed to communicate to a reasonable hypothetical insured an intelligible distinction between the two classes." *Rehders*, 2006-NMCA-058 ¶ 43 (Fry, J. dissenting). Judge Fry opined that the insurer purported to define "a Class 2 insured as 'the Named Insured is not an individual Named Insured.'" *Id.* ¶ 44. To Judge Fry, this was "a statement of fact rather than a definition[.]" *Id.* Consequently, Judge Fry believed that a reasonable insured would think that a Class 2 insured "has a separate, unstated meaning, and then would then flip through the remaining pages of the policy, looking in vain for a definition of 'Class 2 insured.'" *Id.* Judge Fry reasoned that since the provision was ambiguous, the court should give effect to what a "hypothetical reasonable insured" would "glean from the wording of

---

[9] The Court notes that in Federated's Memorandum in support of its 2007 motion for summary judgment (Doc. No. 25), Federated alleged that Mr. Martinez was receiving worker's compensation benefits as a result of the accident through Capitol's worker's compensation carrier– Republic Indemnity. (Doc. No. 25, ¶ 36) (citing Brandt Dep. 10:5-23).

the policy." *Id.* at ¶ 47.  Judge Fry stated that the court should assume the hypothetical insured

"had purchased a policy when he was a sole proprietor and understood from the intelligible

language [governing individual insureds]. . . that family members were covered. We then assume

the hypothetical insured changed his form of business to a corporation." *Id.* Judge Fry concluded

that a "reasonable insured could expect that UM coverage remained the same and that family

members were still covered. Because Allstate failed its responsibility to communicate clearly to

its insured, we should give effect to **these expectations** and conclude that [the son] is an insured

under the UM endorsement."  *Id.* (emphasis added).

The evidence in *Rehders* showed that although the parents specifically informed Allstate

that they were changing their business from a sole proprietorship to a corporation, the parents

did not understand that the change to a corporate "named insured" would have an effect on the

UM/UIM coverage provided under the policy. *Id.* at ¶ 8. Mr. Rehders testified by affidavit that

he intended to maintain the same coverage for the corporation that he had for the sole

proprietorship.  Judge Fry, having determined that the policy was ambiguous, would have given

effect to Mr. Rehders reasonable expectation that the definition for individual named insured

would continue to apply and that his family members would be covered. Thus, Judge Fry would

have held that the son was covered under the UM/UIM provisions of the policy because the

parents intended to cover their family as they had in prior years when their business was a  sole

proprietorship. In this case, however, the Court has evidence that Mr. Brandt, general manager of

Capitol, intended **not** to cover Capitol's employees through the UM/UIM Endorsement because

Mr. Brandt thought his employees would be sufficiently covered for such injuries by worker's

compensation insurance. (Doc. No. 101, Ex. A Brandt Dep. 19:9-22; 53:8-22.)

The *Rehders* majority, however, determined that the son did not qualify as an "insured"

under the unambiguous definition of "insureds" because the son was not an "employee, director or stockholder of the corporation" and he was not occupying a covered vehicle. *Id.* ¶ 18-19. As the majority in *Rehders* recognized, the definition of "insured" in the UM/UIM Endorsement allows Class 1 UM/UIM coverage only when an individual is the named insured. *Id.* ¶ 18. Under the definition, when a corporation is the named insured, no Class 1 coverage is necessary because a corporation cannot sustain "injuries" from an uninsured driver. Additionally under *Rehders*, an employee of a corporation is an "insured" only if the employee occupies a covered auto. Presumably, a person employed by a corporation could have Class 1 coverage under his own automobile policy so that he would be covered for UM/UIM losses under his personal policy regardless of where he was located at the time of the accident.

As a federal court sitting in diversity, the Court is bound to follow the opinions of the appellate courts of New Mexico, just as Judge Martinez did in *Gonzales*, 582 F. Supp. 2d at 1343. Thus, since the identical language has been determined to be unambiguous, the Court, following the majority in *Rehders*, concludes that the definition of "insured" in Allstate's UM/UIM endorsement is not ambiguous. *Id.* ¶ 14-19; 23.

### C. The Policy Definitions Of "Insureds" Are Not Inconsistent

Mr. Martinez argues that Mr. Rommann's testimony in his Declaration that he was confused when questioned repeatedly about whether Mr. Martinez was a Class 1 or Class 2 insured, shows that the definition of "insured" in the UM/UIM Endorsement is ambiguous. Mr. Martinez also points to the testimony of Kelly Hooks, in which Mr. Hooks stated that under the same UM/UIM language, Mr. Martinez would be a Class 2 insured but that employees are Class 1 insureds under the liability provisions of the Policy. (Doc. No. 111, Ex. 9 Hooks Dep. 30:13-31:9.) Mr. Martinez argues that since employees are included in the definition of "insureds" in

32

the liability provisions but not under the UM/UIM provisions, the Policy is inconsistent and should be construed against Federated. Mr. Martinez cites in support, *King v. Travelers Ins. Co.*, a case involving a homeowners' insurance policy that covered losses from plumbing accidents but excluded coverage for damage from underground water discharge. 505 P.2d 1226 (N.M. 1973). In *King*, the insureds' house was damaged by an underground plumbing leak. *Id.* at 1227. The court noted that substantial parts of many plumbing systems are installed underground, and since the exclusion directly contradicted the coverage clause, the exclusion would not be enforced. *Id.* at 1231. In addition, the court considered the insurance agents' confusion about the meaning of the exclusionary clause as "persuasive evidence of the policy's ambiguity." *Id.* at 1232.

Mr. Martinez also cites *Allstate Ins. Co. v. Stone*, 863 P.2d 1085 (N.M. 1993). In *Stone*, the New Mexico Supreme Court held that a provision precluding stacking of coverage directly conflicted with the general allowance of stacking in the multi-car policy. *Id.* at 1088. The court concluded that the Stones' policy "on one hand giveth, but on the other hand it taketh away." *Id.* Based on that inconsistent policy language, the Court found in favor of the insured, stating, "[t]his is the sort of internal inconsistency or irreconcilable conflict that this Court has routinely construed strictly against the insurer and liberally in favor of the insured." *Id.*

Finally, Mr. Martinez cites *Horne v. USF&G*, 791 P.2d 61 (N.M. 1990), which involved an auto insurance policy issued to a family-owned corporation. Horne was an employee who was injured while operating a covered vehicle, and sought to stack coverage under the policy. The court held that the UM/UIM policy definition of insureds was ambiguous because it defined an "insured" as "[y]ou or any family member," which applied to individual insureds but did not make sense if the insured was a corporation or other type of business entity. *Id.* at 62. The court

33

held, "construing all such ambiguities against the insurer, we hold that the employee was a class-one insured and could stack coverage." *Id.* at 64. However, the conclusion of the court in *Horne* that ambiguity is always interpreted in favor of coverage was overruled in *Jaramillo*, as applied to a third party who asserts that an ambiguous policy should be construed in his favor. *Jaramillo*, 871 P.2d at 1347.

Mr. Martinez argues that under these cases, the Policy contains an irreconcilable inconsistency because employees are Class 1 insureds for liability coverage purposes but are Class 2 insureds for UM/UIM coverage. Accordingly, Mr. Martinez maintains that Federated should not be allowed to include employees as "Class 1 insureds" in the liability provisions, but exclude all employees as "Class 1 insureds" in the UM/UIM Endorsement. Mr. Martinez contends that the Court should resolve this internal "inconsistency" against the insurance company in favor of coverage.

The Policy, however, provides different coverages to different "insureds;" the Policy is not internally inconsistent or contradictory. The UM/UIM Endorsement does not conflict with the liability provisions of the Policy, the language of the UM/UIM Endorsement is not susceptible to more than one meaning, the structure of the UM/UIM Endorsement and the other provisions of the Policy is not illogical, and the UM/UIM Endorsement has not failed to address the matter at hand. Hence, there is no inconsistency or ambiguity between the UM/UIM Endorsement and other Policy provisions.

### D.  Stacking Issues Do Not Change the Policy's Definition of "Insureds"

In Martinez's Reply On Renewed MSJ, Mr. Martinez presents for the first time an argument based on Federated's failure to obtain from Capitol a written rejection of stacking of

34

UM/UIM coverage.[10] Mr. Martinez's theory appears to be based on these premises: 1) only Class 1 insureds can stack UM/UIM coverage;[11] 2) under the UM/UIM Endorsement definition of "insureds"  applicable to corporations, nobody qualifies as a Class 1 insured; 3) the only "insureds" under the UM/UIM Endorsement are Class 2 insureds, such as employees directors or shareholders, but only when those insureds are occupying a covered vehicle; 4) there is no stacked UM/UIM coverage under the Policy; 5) New Mexico law requires a written rejection of stacking of UM/UIM coverage and without a written rejection, the maximum amount of stacked coverage  must be "read into" the Policy. *See Jordan v. Allstate Ins. Co.*, 2010-NMSC-051, ¶ 36; *Montano v. Allstate Indem. Co.*, 2004-NMSC-020, ¶ 28, 135 N.M. 681, 92 P.3d 1255.[12]

Mr. Martinez contends that to achieve the maximum amount of UM/UIM coverage under the Policy, required by Capitol's failure to reject stacking, the Court should reform the Policy by substituting the definition of "insureds" in the liability sections of the Policy, under which employees are considered Class 1 insureds, for the UM/UIM Endorsement definition of "insureds." According to Mr. Martinez, since employees are Class 1 insureds under the liability provisions, Mr. Martinez should be considered a Class 1 insured with UM/UIM coverage regardless of where he was located at the time of the accident. Mr. Martinez asks the Court to reform the Policy further by reading out the "occupying a covered vehicle" requirement and by

---

[10] The Court notes that the Tenth Circuit has already reformed the Policy to "read into" it UM/UIM coverage for all non-management employees who show they are "insureds" as defined in the Policy.  *See supra*, discussion of Tenth Circuit's ruling at pp. 11-13 of this Memorandum Opinion and Order.

[11] *Ponder*, 2000-NMSC-033, ¶ 22.

[12] In *Montano*, the New Mexico Supreme Court concluded that if an insurance company does not obtain a written rejection of stacking, then stacked UM/UIM coverages are read into a policy without regard to the intent of the parties. *Id.* ¶¶ 19-21.

making all employees, owners, shareholders etc. Class 1 insureds who can stack UM/UIM

coverage. However, this is a non sequitur.  The issue of stacking is independent of how

"insureds" are defined in an insurance policy.

Mr. Martinez has cited to no case, and the Court is aware of no case, in which stacking is

read into a policy for persons who are not "insureds" under a policy. Stacking is a judicially-

created doctrine that allows an insured, who  purchases UM/UIM insurance in a policy covering

more than one vehicle, to aggregate UM/UIM coverages if the insured is charged a separate

premium for each vehicle. *Montano*, 2010- NMSC -020, ¶ 17. The *Montano* court held that a

provision in a policy that limited the stacking of UM/UIM coverages while charging a separate

additional premium for each vehicle insured, was a violation of New Mexico law. *Id.* ¶¶ 19-20.

To remedy this violation, the New Mexico Supreme Court ruled that an insured may purchase

stacked coverage in a multiple-vehicle policy or reject stacked coverage for one or more of the

vehicles covered if the insurer obtains a clear written rejection of stacking. *Id.* ¶ 20. The

*Montano* court presented a hypothetical to illustrate how an insurer could comply with its ruling

that "in a multiple-vehicle policy insuring three cars, the insurer shall declare the premium

charge for each of the three UM coverages and allow the insured to reject, in writing, all or some

of the offered coverages." *Id.*  The Supreme Court gave this example:

> [I]n the case of a $25,000 policy, if the premium for one UM coverage is $65, two
> coverages is an additional $60, and three coverages $57 more, the insured who paid all
> three (for a total premium of $182) would be covered up to $75,000 in UM bodily injury
> coverage. However, the insured may reject, in writing, the third available coverage and
> pay $125 for $50,000 of UM coverage; or the insured may reject, in writing, the second
> and third coverages and pay $65 for $25,000 of UM coverage; or the insured may reject
> all three UM coverages. In any event, the coverage would not depend on which vehicle,
> if any, was occupied at the time of the injury. Thus, the insured's expectations will be
> clear, and an insured will only receive what he or she has paid for.

*Id.*

The remedy in *Montano* did not include expanding the definition of an insured, but merely clarified that when an insured purchases UM/UIM coverage for more than one vehicle, he will be allowed to stack coverages unless he has rejected it for one or more vehicles. Hence, Mr. Martinez cannot "read into" Capitol's Policy either coverage or stacking for a non-management employee, like Mr. Martinez, who would not be covered under the UM/UIM Endorsement because he did not occupy a covered vehicle when injured.

Since the Court has determined that as a matter of law Mr. Martinez is not an "insured" entitled to coverage under the Policy, clearly Mr. Martinez would not be eligible to stack coverages for all vehicles covered under the Policy. Thus, the Court will deny as moot Mr. Martinez's Motion For Summary Judgment On Stacking Of Uninsured Motorist Coverage Under The Federated Service Insurance Company's Policy (Doc. No. 62), and the Court will also deny as moot Plaintiff Federated Service Insurance Company's Motion For Summary Judgment On The Issue Of Stacking (Doc. No. 67).

IT IS ORDERED that:

1. Martinez' Renewed Motion For Summary Judgment On Coverage (Doc. No. 103) is denied;

2. Plaintiff Federated Service Insurance Company's Motion For Summary Judgment On The Issue Of Uninsured/Underinsured Motorist Coverage (Doc. No. 66) is granted;

3. Danny Martinez' Motion For Summary Judgment On Stacking Of Uninsured Motorist Coverage Under The Federated Service Insurance Company's Policy (Doc. No. 62) is denied as moot; and

4.  Plaintiff Federated Service Insurance Company's Motion For Summary Judgment On

The Issue Of Stacking (Doc. No. 67) is denied as moot.

_____

SENIOR UNITED STATES DISTRICT JUDGE